JOSEPH OKIN et al., plaintiffs-appellants,

*v.*

BROAD AND MARKET NATIONAL BANK et al., defendants-respondents.

[Argued November 23d, 1920.   Decided March term, 1921.]

A borrower filing a bill in chancery to be relieved from a usurious charge or contract must tender himself ready and willing to pay the amount he admits to be due, or, if not, to pay such amount as the court shall find to be due.

---

On appeal from the court of chancery.

*Mr. Aaron Marder,* for the appellants.

*Mr. James H. Stewart,* for the respondents.

The opinion of the court was delivered by

WHITE, J.

The respondent bank, the holder, as collateral to secure a loan made by it to the complainant Okin, of a duly executed and recorded assignment of a $15,000 interest in a second mortgage for $59,000, which Okin owned on a theatre in the city of Newark, purchased said mortgage at a private sale thereof made under a power to make sale in case of default in a previous assignment of the same mortgage as collateral security for another debt of Okin's for $19,000, due one Shiman, which latter sum was the amount paid by the respondent for the mortgage at said private sale. Respondent, thereupon, upon the same day, namely, October 30th, 1916, entered into an agreement, in writing, duly acknowledged and recorded, with the complainants, whereby, in consideration of $3,000 then paid, respondent agreed to sell said mortgage to complainants for the sum of $34,000, to be paid on or before May 29th, 1920 (which date was about one year after the due date of the mortgage), the interest on the mortgage in the meantime to be collected by respondent and applied, first, to the interest on said sum of $34,000; second, to taxes, &c.; third, to repayment of attorney's fees, &c., should respondents foreclose the mortgage, and fourth, any surplus of interest to be paid to complainants. The agreement further provided that should the mortgage be paid off or realized upon in foreclosure proceedings in the meantime, the principal should be applied in the same manner; and, further, should respondent foreclose and buy in the property, it agreed to convey the same to the complainants in consideration of receiving a purchase-money mortgage for $34,000, drawn to fall due on the said 29th day of May, 1920. The agreement further provided:

"The parties of the second part [complainants] further covenant and agree that should they fail to perform this agreement in every particular on or before the 29th day of May, 1920, that they shall have no right to or claim against said mortgage, time being of the essence of this contract, and that upon default by them, the parties of the second part, the party of the first part [respondent] shall hold said mortgage absolutely free and discharged of any right in or claim against the same by reason of this agreement.

"And the parties of the second part further covenant and agree that they have no equity of redemption in said mortgage, except as is provided for in this agreement."

Complainants thereupon paid the $3,000 consideration above mentioned to the respondents, and the agreement has since been carried out according to its terms, except that the respondent bank took promissory notes from complainants and had them regularly renewed each six months since the agreement was signed for the original debts of $19,000 and $15,000, respectively. Respondent says this was done simply to make the transaction appear on its books as a live asset to please the banking department, but complainants claim that it evidences what they testified was the fact, namely, that in reality the agreement in writing was but a cover to hide the usurious nature of the real transaction which was, as previously agreed between them, that the respondent bank would take over the Shiman assignment and debt of $19,000 and should extend the time of payment of both this and the $15,000 debt which it already held until May of 1920, for which it was to receive the usurious consideration of $3,000 in addition to lawful interest on the debts in the meantime.

Shortly prior to the due date of the mortgage complainants notified the respondent bank to require payment of the principal of the mortgage. Instead of doing this, the respondent bank, as complainants claim, extended the time of payment of said mortgage for an additional year without consulting complainants about so doing; and, thereupon, on September 15th, 1919, complainants filed this bill in which they pray, among certain other incidental reliefs, that the respondents be directed to foreclose the mortgage and account for the proceeds, and that the court decree that the amount which respondents are entitled to receive in full settlement is the sum of $31,000—that is the bare principal of the debts without interest and less the $3,000 alleged usurious payment heretofore received.

The difficulty with the first of these two prayers is, that the respondent did not undertake in the agreement to foreclose the mortgage at maturity, or at any other time, but only to assign the mortgage on or before the specified date, and this agreement

being recorded, any extension of the mortgage without complainants' knowledge would, of course, be subject to their rights under the agreement; and the trouble with the second of said two prayers is that it appears in the case that the complainants have not made any tender of the amount which, according to their own contention, the respondents are entitled to receive before parting with what complainants say is simply security, nor do complainants in their bill filed in this case tender themselves ready to pay said amount or to pay such amount as the court shall find to be the proper amount. *Miller* v. *Ford, 1 N. J. Eq. 359; Ware* v. *Thompson, 13 N. J. Eq. 66; Giveans* v. *McMurtry, 16 N. J. Eq. 473; Vanderveer* v. *Holcomb, 17 N. J. Eq. 547.*

But it is urged that such a tender was not required in this case because the bill was filed September 15th, 1919, and under the agreement complainants did not have to make any payment until May 29th, 1920. Complainants, however, had the privilege of paying at any time before the latter date, and as they saw fit to ask the aid of equity at the earlier date they were under the same obligation to do equity then as if they had waited until later.

We think, therefore, that for the reasons above stated the vice-chancellor was right in dismissing the bill and the decree is hereby affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR—11.

*For reversal*—None.